[Civ. No. 10495.   Second Appellate District, Division Two.—October 17, 1935.]

O. T. GILBANK, as Trustee, etc., Respondent, v. ROY F. BENTON, Appellant.

Cosgrove & O'Neil for Appellant.

Harry Ashton for Respondent.

WOOD, J.—Defendant obtained a judgment in November, 1933, against Ruether-Graham Feed Co., Ltd. (hereinafter referred to as the Feed Company). He secured a writ of execution and on February 21, 1934, the sheriff levied upon certain property of the Feed Company which defendant claims to be not capable of manual delivery. A keeper was placed in charge of the property and on February 24, 1934, one Wheeler filed with the sheriff his verified third party claim to the property levied upon. The sheriff promptly notified defendant of the third party claim and demanded that an undertaking in the sum of $40,000, twice the alleged value of the property, be delivered to him. Defendant did not present the undertaking nor furnish further funds to the sheriff to pay the expenses of the keeper. The sheriff withdrew the keeper on February 26, 1934, and on the same day defendant filed with the court a petition for an order to determine title under the provisions of section 689 of the Code of Civil Procedure. The court issued its order fixing March 15, 1934, as the date for the determination of title. The court further ordered that pending the determination of title "no transfer or other disposition of the property hereinabove described be had". On March 2, 1934, a copy of the order of the court was served on Wheeler and on the Feed Company. There-

after upon the hearing of the order for determination of title the court rendered judgment that the Feed Company was the owner of the property in question, subject to certain rights of Wheeler as assignee of conditional sales vendors. On April 9, 1934, the property was sold to defendant at sheriff's sale. The Feed Company, upon filing its voluntary petition in bankruptcy, was on July 5, 1934, adjudged a bankrupt. This action was commenced by plaintiff as trustee in bankruptcy of the estate of the Feed Company against defendant for the purpose of recovering the property in dispute for the benefit of the bankrupt estate, claiming that defendant had no lien senior to the rights of the other creditors of the Feed Company. The trial court found the value of the property to be $7,500 and rendered judgment in plaintiff's favor for the return of the property or, in the alternative, for damages in the sum of $7,500.

In prosecuting this appeal defendant contends that the proceedings taken by him pursuant to the provisions of section 689 of the Code of Civil Procedure were in the nature of a creditor's bill, which subjected the assets of his judgment debtor to the lien of his judgment and that he thereby obtained an equitable lien upon such assets prior to March 5, 1934, and consequently more than four months prior to the adjudication of the Feed Company as a bankrupt. Plaintiff concedes in his brief that "a judgment creditor by filing a creditor's bill to subject the assets of his judgment debtor to the lien of his judgment thereby obtains an equitable lien upon such assets" and that "the equitable lien created by filing of a creditor's bill is superior to the claim of the trustee in bankruptcy of the judgment debtor where the petition in bankruptcy is filed more than four months after the filing and serving of the creditor's bill". Plaintiff, however, vigorously takes issue with the contention of defendant that the proceedings taken under section 689 of the Code of Civil Procedure constituted a statutory creditor's bill. He concedes that "proceedings under section 720, Code of Civil Procedure, under the decisions of the courts of last resort of this state, constitute a statutory creditors' bill", but he argues that the same rule does not apply to proceedings under section 689 of the Code of Civil Procedure. He frankly states: "If it is conceded, and it certainly is not, that a 'Petition to Determine Title Under Section 689, Code of Civil Procedure,' has the

same legal effect as proceedings under section 720, Code of Civil Procedure, the appellant should prevail."

The provisions of section 720 of the Code of Civil Procedure, and of section 689 of the Code of Civil Procedure, are almost identical in purpose and in the remedy provided. Section 720 has been placed in the code under the chapter entitled "Proceedings Supplemental to Execution". It provides that if it appears that any person during the course of the proceedings appears to have property of the judgment debtor or that he claims an interest in the property adverse to the judgment debtor, "the judgment creditor may maintain an action against such person for the recovery of such interest . . . and the judge or referee may, by order, forbid a transfer or other disposition of such interest or debt, until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the judge or referee granting the same, or the court in which the action is brought, at any time, upon such terms as may be just." Section 689 has been placed in the code in the chapter entitled "Execution", this chapter, like the chapter entitled "Proceedings Supplemental to Execution", being in that part of the code under the general title "Execution of Judgment in Civil Actions". Section 689, as amended in 1933, now provides that whenever a verified third party claim is served, the plaintiff shall be entitled to a hearing within twenty days in order to determine title to the property in question. If the plaintiff "gives the undertaking mentioned above to have the property held, such third party may initiate similar proceedings to determine title". The section further provides: "The court may order the sale of any perishable property held by such officer and direct the deposit of the proceeds of such sale, and may, by order, forbid a transfer or other disposition of the property until the proceeding, herein provided, for the determination of such title, can be commenced, and prosecuted to termination. Such order may be modified or vacated by the judge granting the same, or by the court in which the proceeding is pending at any time, upon such terms as may be just. Upon the termination of such proceedings the court may make all proper orders for the disposition of such property or proceeds." It will be noted that in the most essential part of this section the legislature has followed almost *verbatim* the language of section 720. Before the amendment of 1933, sec-

tion 689 did not contain a provision enabling the court to "forbid a transfer or other disposition of the property" pending the determination of title. In the case of *Duncan* v. *Superior Court*, 104 Cal. App. 218 [285 Pac. 732], decided in 1930, it was held that if a party proceeding under this section did not present the undertaking, the statute contained no provision whereby the sheriff might retake the property or whereby the court could impound the property. Apparently the legislature amended the section in 1933 for the purpose of supplying the defects in the statute which had been pointed out in the Duncan case.

An excellent statement concerning the uses of a creditor's bill is found in *Frankel* v. *Boyd*, 106 Cal. 608, 611 [39 Pac. 939] : "The nature and purpose of a creditor's bill is to enable the creditor to apply to the payment of his debt property of the judgment debtor which, by its nature, cannot be taken in an execution at law, or to convert the holder of a legal estate into a trustee and call for a conveyance, or to have it sold in satisfaction of his claim, or to aid the creditor in reaching property of his debtor by removing fraudulent judgments or conveyances which defeat his remedy at law." In our opinion a creditor who follows the proceedings set forth in section 689 of the Code of Civil Procedure, as amended, obtains an equitable lien in like manner as a creditor who follows the proceedings set forth in section 720 of the Code of Civil Procedure.

Plaintiff relies upon the finding of the trial court to the effect that the levy of execution was released "by reason of instructions of said plaintiff's attorney". This finding is not supported by the evidence. It is true that the sheriff certified that he had released the property "by instructions from plaintiff's attorney". It was established by uncontradicted evidence at the trial that no instructions on the subject were given by plaintiff's attorney. It is apparent that the true reason for the withdrawal of the keeper before the expiration of the period in which an undertaking could be given was the failure to deposit the necessary funds for maintaining a keeper. The statement in the sheriff's certificate was admitted over defendant's objection. In *Braden* v. *Cline*, 51 Cal. App. 424 [196 Pac. 913], the court said: "In support of plaintiff's contention that the lien was lost by abandonment and surrender of possession of the property by the sheriff, his

affidavit to that effect was received in evidence over defendant's objection. This ruling undoubtedly was error." ▇
Even if it be conceded that the statement in the certificate was admissible it would not be binding upon the court. The rights of an attaching creditor are dependent upon what the sheriff has actually done and not upon the return he may have made. (*Brusie* v. *Gates,* 80 Cal. 462 [22 Pac. 284].) The sheriff's opinion as to the legal effect of his acts, whether correct or erroneous, does not form any part of his return, and will not affect the rights of any party to the action. (*Hooper* v. *McDade,* 1 Cal. App. 733 [82 Pac. 1116].)

▇ The evidence shows without contradiction that most of the property in question was not capable of manual delivery. Some of the articles levied upon were hay grinding machinery, conveyor and motor, weight 11,500 pounds, which would take two men a full day to remove, and to remove which one end of the building would have to be knocked out, this equipment being set in a concrete floor and held in place by screws, a steel boiler, embedded in brick, weight 10,000 pounds, which would take three men three days to remove, a molasses pump, weight 600 pounds, set in concrete floor with screws and located underground. A number of other very bulky articles were levied upon which were attached to a concrete floor by screws. Without giving a detailed list of the articles levied upon, it can fairly be stated that most of them were such as should be classified as property not capable of manual delivery.

▇ The sheriff left with the person in possession of the property a copy of the writ and a notice that the property in his possession was levied upon in pursuance of the writ. Since the greater part of the property was not capable of manual delivery, the levy, at least as to such part, was valid in accordance with the provisions of subdivision 6 of section 542 of the Code of Civil Procedure. In *Irilarry* v. *Byers,* 84 Cal. App. 28 [257 Pac. 540], it is said: "There is no necessity for an actual handling of heavy and unmanageable articles to levy or maintain an attachment. . . . It is not requisite to the attachment of personal property not capable of manual delivery that it be taken into custody by the sheriff, nor that having been taken by him, his possession be retained." It follows that a valid levy having been made more than four

months before the adjudication of bankruptcy, defendant's claims to priority should have been upheld.

In the preservation of the property defendant expended a sum found by the court to be in excess of $1200. In its judgment the court did not provide that plaintiff should reimburse defendant for these expenditures as a condition of recovering the property. Defendant now insists that in any event he should be reimbursed for his "out-of-pocket" expenditures. In view of our holding that the court erred in rendering judgment for the plaintiff it becomes unnecessary to pass upon this point.

The judgment is reversed with directions to the trial court to enter judgment in favor of defendant.

Crail, P. J., and McComb, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 5, 1935.